## SCHOOL-DISTRICT No. 16 *v.* CONCORD.

A balance of a fund of an abolished school-district, remaining after the assessment and remission of the equalizing tax authorized by Laws of 1885, *c.* 43, *s.* 2, is applied by law, as nearly as may be, to the use of those who would have been entitled to the benefit of it if the district had not been abolished; and the school board of the town-district may be appointed trustees for the disposition of the money.

BILL IN EQUITY, by a district abolished by *c.* 43, Laws of 1885, for the disposition of $1,652.79 held by the defendants, belonging to the plaintiffs, and not included by the tax assessors in the equalization of the property of abolished districts.    Facts agreed.

*D. Cross*, for the plaintiffs.    This proceeding is practically in the nature of a bill of interpleader to determine the title to the money in question, and the right to its possession and use.    The city of Concord, as such, make no claim to this fund, and substantially admit their liability as a trustee or agent, but are uncertain as to the present purpose of the trust, or, if the trust has terminated or expired, as to the parties entitled to the money.    It was originally collected and held by the city or their officers in trust to be applied for the benefit of the inhabitants of the plaintiff district in educating their children under the common-school system as then existing.    *School-District* v. *Sanborn*, 25 N. H. 38; *Fuller* v. *Heath*, 89 Ill. 296; G. L., *c.* 85; Gen. Sts., *c.* 77.    On demand it was paya-

ble to the prudential committee of the district, who would then hold it as a trustee or agent for the same purpose, and would be authorized to expend it for certain educational purposes in the district. Its use for any other object or in any other locality was unauthorized, and would have been illegal. It would have been a diversion and misappropriation of taxes, furnishing the tax-payers a ground for just complaint. If the money, though not wanted or needed by the district, had been applied to schooling purposes in other districts having a scanty appropriation, it could not be seriously denied that the diversion would be a gross breach of trust, and that the district or their tax-payers (and perhaps both) would be entitled to some remedy. *School-District* v. *Morrill*, 59 N. H. 367, 369; *School-District* v. *Sherburne*, 48 N. H. 52. If the money held by the city treasurer for the benefit of the district had been paid over to the prudential committee before *c.* 43, Laws of 1885, took effect, it could not be said that it would have become the " property" of the district, which the district might " lawfully sell and convey." When delivered to the district's authorized agent, it would not have become their money or property, nor his, but would still be a trust fund for the benefit of the inhabitants of the district, created by their tax-payers in accordance with well understood provisions of law. The district could not use it to pay the expense of building a school-house or for liquidating their debts. It would belong to them in a qualified sense only, and for special purposes. *Barrett* v. *School-District*, 37 N. H. 445, 448. It is plain, therefore, that the money did not pass to the new town district, which succeeded, under Laws of 1885, *c.* 43, *s.* 2, to such property only of the old districts as they " might lawfully sell and convey." Nor would it have been competent, on constitutional grounds, for the legislature to authorize, in express words even, such a diversion of money raised by taxation. To allow money paid and apportioned for the exclusive benefit of one district to be applied for the benefit of another, would be as unjust, inequitable, and unconstitutional as to authorize taxes raised in one town to be appropriated in another, or to make A liable for B's debts. *Hitchcock* v. *St. Louis*, 49 Mo. 484, 488; *Edes* v. *Boardman*, 58 N. H. 580, 589; Dillon Mun. Corp., *s.* 650.

As a corporation may exist for some purposes after their dissolution (G. L., *c.* 147, *s* 17, *c.* 86, *s.* 28), the plaintiff district, being technically entitled to the money by their prudential committee, may be held to exist, and may receive the money, if it is reasonably necessary and convenient for the final disposition of the fund; but if the fund can be legally, equitably, and conveniently disposed of without extending or continuing the powers of the defunct corporation, such a method should be adopted. *School-District* v. *Greenfield*, 64 N. H. 84. As the district have ceased " to exist for general purposes " (*Sargent* v. *School-District*, 63 N. H. 528), they could legally do nothing with the money except to hold it as trustee on

a trust that has terminated. They own no school property, and have no care or supervision over the public schools. They can neither establish nor provide for the support of a public school. They are deprived of the powers they formerly had for maintaining a public common school, and are as incapable of exercising that privilege or franchise as though they had never had a corporate existence. If their inhabitants should form themselves into a private-school corporation to afford greater facilities for the education of their children, the body corporate thus brought into existence would not be entitled to use this money in paying for teachers, fuel, and incidental expenses (G. L., c. 85, s. 3) as the original district might have used it; for the appropriation was made, and the taxes were paid, not for a private but for a public school; and the diversion of the money in such a way would be as illegal as its use by the town district. Taxes cannot be raised or appropriated for merely private objects. Cooley Tax. 105; *Jenkins* v. *Andover*, 103 Mass. 94, 101; *Curtis* v. *Whipple*, 24 Wis. 350, 353; Dillon Mun. Corp., s. 736.

If, then, the officers of the city and of the district, having money in their hands raised by taxation for school purposes, as this fund was raised, hold it as trustees, and if the object of the trust cannot legally be accomplished because the *cestui que trust* no longer exists or is no longer capable of receiving the benefit in any legal and practicable way, the fund must revert, by way of a resulting trust, to the tax-payers of the district by whose money it was established. 2 Story Eq. Jur., ss. 1156, 1196; Perry Trusts, s. 160; *Easterbrooks* v. *Tillinghast*, 5 Gray 17. The money still subsists for legitimate uses; it was not destroyed or rendered unavailable by the legislative act which annihilated the district's corporate existence. And as the taxing power has voluntarily incapacitated itself from using it in the way and for the purpose it substantially promised the tax-payers it would use it, it has failed to perform its duty or contract, and holds the money as the tax-payers' bailee, discharged of any other trust in regard to it. The consideration for the payment of the money has wholly failed, and the payers are now entitled to it. Perhaps the tax-payers of the district should be made parties to the bill, or be substituted in place of the plaintiffs; for no useful purpose would seem to be subserved by the payment of the money to the district or its agent. No reason exists why it may not conveniently be paid to the tax-payers at once. As a matter of fact, they are few in number. But as a matter of law, their number would not probably affect their legal rights. The Amoskeag Mfg. Co. of Manchester own the greater part of the taxable property in the district, and have paid more than nine tenths of the taxes in question. Their interest in the fund, therefore, is large, and they should receive their proportional share of the rebate, as well as the other tax-payers whose interests can be easily determined. As it will practically make little, if any, dif-

ference, so far as we are informed, whether the tax assessed against the persons and property of the district for 1886 is deducted from the unexpended taxes in question and the balance paid to the tax-payers of the district, or whether the set-off is made against each individual tax-payer's part of the fund, we do not deem it necessary at this time to discuss that question.

*Leach & Stevens* and *H. G. Sargent*, for the defendants.

*D. Cross*, for the plaintiffs. If the fund in question passed to the town district under s. 2, c. 43, Laws of 1885, notwithstanding the apparent exclusion of such property from the operation of that section, we insist that it could only pass as other school property passed, subject to the principle of compensation to the tax-payers. The legislature have undoubted authority to dispose of the general school property of the state in whatever way they may deem best in aid of the educational policy of the state. The entire school property, derived from taxation, is in the nature of a public trust fund, as well as money raised for general school purposes. Towns and school-districts legally authorized to hold such property or money, and to dispose of it according to certain statutory provisions, require no title to it other than that of trustees or agents for the public. They are merely parts of the machinery established by the legislature for the convenient accomplishment of a public purpose; and they may be deemed no longer needful, and be dispensed with or abolished, at the will of the legislature, so far at least, as the use and enjoyment of the public fund is concerned. *Child* v. *Colburn*, 54 N. H. 71; *Farnum's Petition*, 51 N. H. 376; *Chicago* v. *People*, 80 Ill. 384; Cooley Const. Lim. 240. A school-district, as such, have no vested rights of property in their school-house; and, when abolished, their corporate powers are at an end, unless their continued existence is necessary for some purpose of the trust. *School-District* v. *Greenfield*, 64 N. H. 84.

Though the title to the property might pass to the town or to the town district without an express statutory provision to that effect (*School-District* v. *Richardson*, 23 Pick. 62, *School-District* v. *Tapley*, 1 Allen 49), it would pass charged with the trust for educational purposes imposed upon it by the legislature, and guaranteed to the tax-payers whose money created it. "The money was raised by an assessment on all the polls and taxable estate of the town, and the statute contemplates that each district may receive back, as nearly as practicable, the amount they have contributed to the school fund." *School-District* v. *Morrill*, 59 N. H. 367, 369. But if the district cannot receive it back, or, if they can, cannot use it, the tax-payers' interest in the school property is not thereby abolished, because that interest was a vested interest. If, therefore, the money in question passed to the city the same as the district school-house, the same principle of equalization must

apply to it. If the sum of money is $1,000, that sum, like the appraised value of the school-house, must be remitted to the tax-payers of the district in some convenient way. But an assessment and collection of $1,000 to pay for the $1,000 received by the city would be a technical, unnecessary, and absurd proceeding, evidently not contemplated by the legislature. It would be like a trade by which two men agree to swap equal sums of money, and would present the absurdity of a law authorizing A to take $100 of B's money on condition that he at once return an equivalent in money. Nothing would be accomplished by the operation, and the formal change of title would be useless. A convenient and reasonable repayment or equalization can be effected by a return directly to the tax-payers of the money, which would be within the spirit and purpose of the law abolishing the old school-districts.

"The general rule of equalization applied to abolished school-districts by s. 2, c. 43, Laws of 1885, is an affirmance of the rights of all parties concerned." School-District v. Greenfield, 64 N. H. 84, 85. That statute did not create the tax-payers' rights in the taxes paid years before, but it recognized them, and provided for their vindication. If no provision for an equalizing tax had been inserted in the act, their rights in school property would have been no less, nor would they have been less entitled to some method or remedy for an equitable adjustment of their various interests. The tax was raised, not for general municipal purposes, nor for general school purposes, but for the support of schools. G. L., c. 85, s. 3. It could not be used in the purchase of real estate for the district, or for the purpose of building school-houses. Lee v. School Trustees, 36 N. J. Eq. 581. Its object was special, and limited by statute. While it was legally raised, and might have been legally used under the old school system, it does not follow that its use under a new and different school system, without the consent of the tax-payers, is legally authorized; and we contend that it is not authorized. When taxes are legally assessed and paid for a special purpose which is afterwards abandoned or judicially declared to be illegal, the tax-payers are entitled to a remission or refunding of the taxes they were obliged to pay, although they paid them voluntarily. The municipality cannot retain the money, and omit to apply it to the purpose for which it was raised. Such a holding would legalize extortion and robbery. Dillon Mun. Corp., s. 945, n.; Bradford v. Chicago, 25 Ill. 411, 415; Greedup v. County, 30 Ark. 101; Worthen v. Badgett, 32 Ark. 496, 523; Jersey City v. O'Callaghan, 41 N. J. Law 349; Peyser v. Mayor, 70 N. Y. 497.

Assume that the legislature, if they had authority, should abolish the present school system, and declare that the public should no longer be taxed for educational purposes: what would become of the public school property, or the unexpended school money? Evidently the tax-payers' rights could not thus be divested, and a

denial of their right to their just and equitable shares in the property would be an unauthorized exercise of judicial power. *Grim* v. *School-District*, 57 Pa. St. 433, 437. Having the right, they must in some convenient way have a corresponding remedy; and when the only convenient way is the refunding of the money, they are entitled to some remedy that will produce that result. But in this case it would be a diversion of the fund from its original purpose, whether it is used in the support of schools in other districts against the express purpose of its levy and collection, or whether it is applied in payment of the city debt, or for some other general municipal purpose. If the city cannot have the benefit of the money for their general purposes, it is difficult to understand how other parts of the city could use it for schooling, or how it can be used at all by the officers in whose hands it now is. Having been raised by a special tax for the support of schools—not for some other object—and having been apportioned to the plaintiff district, the money, like taxes raised for other special objects which are abandoned, belongs to the tax-payers who paid it. It is not easy to perceive the distinction, if any, between the case where taxes are raised for purposes which are afterwards declared to be illegal, and this case. In both, the money is properly raised and voluntarily paid, but its application is found to be legally impossible. The remedy by *mandamus* to compel its application ceases to exist *ex necessitate*, and the trust, having failed and become legally impossible, must terminate; and the money must revert to the donors. "Numerous cases might be named where the return of taxes collected would be the only just proceeding to be taken. Money raised for a special emergency may not be required by the emergency ceasing." *Com'rs* v. *Lucas*, 93 U. S. 108, 115; *Virden* v. *Needles*, 98 Ill. 366, 372; *Bass* v. *Fontleroy*, 11 Tex. 698.

DOE, C. J. District No. 16 having been abolished by the act of 1885 (*c.* 43), the defendants, holding the district's money, properly refused to pay it to any one until the payee was judicially ascertained. The bill is properly brought by the plaintiffs, and could have been brought by the defendants, for an adjudication of the proper disposition of the money which is applied by law, as nearly as may be, to the use of those who would have been entitled to the benefit of it if the district had not been abolished. The fund has been accumulating in the city treasury fifteen years, during a part of which time the district had no school because it had no scholars. It was one of the increasing number of districts whose childless condition called for the act of 1885, or some other provision against the evil of an annual tax that could not be used for the purpose for which it was raised.

In the reserved case, no reason appears why the equalizing school-property tax of 1886, assessed on persons and property within the limits of the abolished district, should not be paid out of

this fund. But a maintenance of the district organization for the management and disposition of the money would be an inconvenient and unnecessary mode of administration. *School-District* v. *Greenfield*, 64 N. H. 84. By virtue of their official duties, the school board of the town district seem to be proper persons to be appointed trustees. If cause is not shown for a different course, they will be appointed at the trial term, with instructions to pay the plaintiffs' share of the equalizing tax, and the plaintiffs' reasonable costs and expenses of this suit (to be determined by the court), and to apply the balance for the plaintiffs' use and benefit. If doubts arise as to any matter of detail, the trustees can apply at the trial term for further instructions which the facts stated in the case do not enable us to give at this time.

*Case discharged.*

CARPENTER and BINGHAM, JJ., did not sit: the others concurred.